\_\_\_ FILED  \_\_\_ ENTERED
\_\_\_ LODGED  \_\_\_ RECEIVED

APR 28 2009   RE

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

Summons issued ser 25747

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VALVE CORPORATION, a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>ACTIVISION BLIZZARD, INC., a Delaware corporation,<br><br>Defendant. | No. **C09-0579**<br><br>COMPLAINT FOR:<br><br>(1) CONFIRMATION OF ARBITRATION AWARD; AND<br><br>(2) DECLARATORY JUDGMENT |

Plaintiff Valve Corporation alleges:



09-CV-00579-CMP

## I. PARTIES

1.1   Plaintiff Valve Corporation ("Valve") is a Washington corporation in good standing. Valve's principal place of business is in Bellevue, Washington.

1.2   Activision Blizzard, Inc. ("Activision") is a Delaware corporation with its principal place of business in Santa Monica, California. Activision is the successor-in-interest to Vivendi Games, Inc., formerly known as Vivendi Universal Games, Inc. Vivendi Universal Games, Inc. is the successor-in-interest to Sierra Entertainment, Inc., formerly known as Sierra On-Line, Inc. Activision is the successor-in-interest to these entities. All references to Activision herein shall include its predecessors-in-interest identified above. On information and belief Valve alleges that Activision does business in this judicial district.

COMPLAINT FOR CONFIRMATION OF ARBITRATION AWARD
AND DECLARATORY JUDGMENT - 1
4820-1096-8835.01
042809/1129/63478.00007

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

## II. JURISDICTION, VENUE AND APPLICABLE LAW

2.1   This is an action for the confirmation of a final arbitration award and declaratory judgment under 28 U.S.C. § 2201. On April 6, 2009, Valve received an arbitration award in its favor ("April 6 Award") requiring payment of $2,391,932 by Activision. The Arbitration Agreement between the parties requires that an arbitration award be paid within ten business days of the award. Activision refuses to pay the full amount of the April 6 Award. Valve seeks an order confirming the award and entry of judgment against Activision for the unpaid amount of the April 6 Award, plus accrued interest at the agreed rate, and attorneys' fees and costs incurred in this action.

2.2   Valve also seeks declaratory judgment that, under the Agreements between the parties relating to the final termination of their relationship, the audit and arbitration process agreed to has been concluded and is final, and that Activision is not entitled to re-open the audit or arbitration process to assert a claim for overpayment of royalties against Valve.

2.3   This Court has subject matter jurisdiction under 28 U.S.C. §§ 1332 and 2201. The amount in controversy exceeds $75,000. This Court has pendent jurisdiction over the state law claim asserted herein.

2.4   Venue is proper in this district under 28 U.S.C. § 1391(b), and because the parties have agreed to venue in this judicial district. The parties agreed that their Agreements would be construed and enforced in accordance with the laws of the State of Washington.

## III. FACTUAL ALLEGATIONS

3.1   Valve was founded in 1996. Valve is a leading developer and publisher of video games and other content for the personal computer and game consoles.

3.2   Activision was formed in 2008 by the merger of Vivendi Games, Inc. and Activision Corp. Activision is a publisher of video games.

COMPLAINT FOR CONFIRMATION OF ARBITRATION AWARD
AND DECLARATORY JUDGMENT - 2
4820-1096-8835.01
042809/1129/63478.00007

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

3.3   In 2001, Valve and Activision entered into a Software Publishing Agreement ("SPA") under which Valve granted Activision the right to distribute video games developed by Valve worldwide in return for Activision's agreement to pay royalties to Valve.

3.4   In 2002, Valve brought suit against Activision in the Western District of Washington alleging, *inter alia*, breach of the SPA and copyright infringement. <u>Valve Corp. v. Sierra Entertainment Inc.</u>, No. 02-cv-01683 (W.D. Wash.).

3.5   In 2005, Valve and Activision entered into a Settlement Agreement that provides, *inter alia*, that Activision's license to distribute Valve products would terminate on October 31, 2005 ("Cut Off Date"). In connection with the Settlement Agreement, the parties entered into an Audit Agreement and a Termination Agreement. A copy of the Audit Agreement is attached as Exhibit A.

3.6   In the Audit Agreement the parties agreed that Activision would provide a final royalty report to Valve covering royalties owing through the Cut Off Date. The Agreement also provides for a single, final audit of Activision's royalty statements for the period of July 1, 2001 to October 31, 2005 ("Audit Period"). The parties agreed to a process for conducting the audit and a process for final resolution of any disputes regarding the conduct of the audit and any disputes concerning findings made by the audit. The parties agreed to the appointment of an Audit Arbitrator and on the process for conducting an audit arbitration.

3.7   In the Audit Agreement, Activision and Valve agreed that the decision of the Audit Arbitrator would be "final and binding" and that any arbitration award would be paid within ten business days of receipt of the award.

3.8   An audit arbitration was conducted and, on April 6, 2009, the Audit Arbitrator rendered her final award (the "April 6 Award"), finding that Valve was owed $2,391,932 including interest. This is substantially less than the amount found by the

COMPLAINT FOR CONFIRMATION OF ARBITRATION AWARD
AND DECLARATORY JUDGMENT - 3
4820-1096-8835.01
042809/1129/63478.00007

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

auditors; however, Valve recognized the finality of the contractually agreed dispute resolution procedure for the audit and therefore expected payment and closure.

3.9     One day later, Activision challenged the April 6 Award, claiming that Valve had been overpaid in the amount of $424,136 including interest. This overpayment claim had only been raised in Activision's March 3, 2009 arbitration brief and had therefore not been submitted to the contractually agreed audit and dispute process. Valve and its auditor KPMG received no notice of this claim during the audit period or during the agreed audit process. Neither was Activision's claim for overpayment subjected to audit as required by the Audit Agreement. Activision's overpayment claim was not the subject of a Notice of Dispute as required by the Audit Agreement and was not discussed during the CFO conference between the parties, which the parties agreed in the Audit Agreement was intended to have the parties "confer and attempt to resolve the Dispute. . . ."

3.10    The Audit Arbitrator reviewed Activision's overpayment claim and properly refused to consider it because it had not been submitted to the agreed upon audit and dispute process. By letter of April 17, the Audit Arbitrator confirmed that her ruling of April 6 "stands as delivered."

3.11    Notwithstanding the final ruling of the Arbitrator, on April 20, 2009, Activision paid Valve $1,967,796 – $424,136 less than the amount of the April 6 Award. The unpaid amount is alleged by Activision to represent an overpayment of royalties.

3.12    On April 22, 2009, Activision represented to Valve that Activision would not pay Valve the remaining $424,136 of the April 6 Award, and that if the award was confirmed by this Court it would commence suit against Valve seeking recovery on its post-audit overpayment claim.

### IV.  FIRST CLAIM FOR RELIEF:  CONFIRMATION OF ARBITRATION AWARD

4.1     Valve re-alleges the allegations set forth in Paragraphs 1.1-3.12, and by this

COMPLAINT FOR CONFIRMATION OF ARBITRATION AWARD
AND DECLARATORY JUDGMENT - 4
4820-1096-8835.01
042809/1129/63478.00007

Riddell Williams p.s.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

reference incorporates the same herein.

4.2   The parties agreed that the decision of the Audit Arbitrator is final and binding and would be paid within ten business days.

4.3   The Audit Arbitrator awarded Valve $2,391,932 on April 6, 2009.

4.4   Activision paid Valve $1,967,796 – $424,136 less than the April 6 Award.

4.5   Activision has refused to pay the April 6 Award in full as agreed.

4.6   The April 6 Award has not been vacated, modified, or corrected, and remains unsatisfied. Valve is entitled to confirmation of the April 6 Award under the Washington Arbitration Act, RCW 7.04A.220

## V. SECOND CLAIM FOR RELIEF: DECLARATORY JUDGMENT

5.1   Valve re-alleges the allegations set forth in Paragraphs 1.1-4.6, and by this reference incorporates the same herein.

5.2   Activision has represented to Valve that it will not pay Valve $424,136 of the April 6 Award because it claims that amount is a previous overpayment of royalties to Valve by Activision.

5.3   Activision has represented to Valve that it will contest any attempt by Valve the confirm the April 6 Award.

5.4   Activision has represented to Valve that if the Court confirms the April 6 Award, it will sue Valve to recover the alleged overpayment of $424,136.

5.5   An actual, substantial, and continuing justiciable case or controversy exists between Valve and Activision regarding Activision's payment to Valve of the full amount of the April 6 Award and Activision's assertion that it is entitled to bring suit on its attempt to restate its final royalty report after the audit period and after final conclusion of the audit arbitration process.

5.6   Valve is entitled to a declaration confirming the April 6 Award.

5.7   Valve is entitled to a declaration that the royalty audit process between the

COMPLAINT FOR CONFIRMATION OF ARBITRATION AWARD
AND DECLARATORY JUDGMENT - 5
4820-1096-8835.01
042809/1129/63478.00007

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

parties is final and has been concluded, and that Activision is bound by the Audit Agreement and may not seek recovery of its overpayment claim by re-opening the audit process or by bringing suit to recover alleged royalty overpayments.

## VI. PRAYER FOR RELIEF

WHEREFORE, Valve prays that the Court grant it the following relief:

1. Enter judgment confirming the April 6 Award in Valve's favor.

2. Enter judgment in Valve's favor and in the amount of the deficiency in Activision's payment of the April 6 Award, including accrued interest to date of entry of judgment at a rate of one percent per month, compounded monthly, as provided by the agreement of the parties.

3. Award Valve its costs and attorneys' fees incurred in this action.

4. Enter declaratory judgment that the royalty audit procedure agreed to by the parties is final and cannot be re-opened by Activision.

5. Enter declaratory judgment that Activision is bound by the Audit Agreement and is not entitled to bring suit on its post-audit overpayment claim.

6. Provide Valve with such other and further relief as the Court deems just and equitable.

DATED this 28th day of April, 2009.

RIDDELL WILLIAM P.S.

By _____
Karl J. Quackenbush, WSBA #9602
Christopher Schenck, WSBA #37997
Attorneys for Plaintiff
VALVE CORPORATION

COMPLAINT FOR CONFIRMATION OF ARBITRATION AWARD
AND DECLARATORY JUDGMENT - 6
4820-1096-8835.01
042809/1129/63478.00007

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

EXHIBIT B
Audit Agreement

This Audit Agreement is entered into between Sierra Entertainment, Inc. (formerly known as Sierra On-Line, Inc.), a Delaware corporation and Vivendi Universal Games, Inc., a Delaware corporation (collectively "VUG") and Valve Corporation, a Washington corporation ("Valve").

1.  After Valve receives the final royalty statement from VUG pursuant to Section 6 of the Termination Agreement, but no later than one hundred twenty (120) days thereafter, and with at least fifteen (15) days advance written notice, Valve may, at its own expense, initiate a single, final audit of VUG's books of account and the underlying supporting documentation relating to the licensing and distribution of the Retail Packaged Products and Marketing Expenditures in order to verify the accuracy of the applicable royalty statements tendered by VUG pursuant to the SPA and VUG's compliance with its HL2 Marketing Requirement, as defined in paragraph 11 of the Termination Agreement (the "Audit"). Valve's written audit notice shall specify the period to be audited (the "Audit Period"), provided, however, that the Audit Period may not exceed the range of July 1, 2001 through the Cut-Off Date.

2.  The Audit shall be conducted only by a nationally recognized accounting firm who is not working on a contingency fee basis, and does not have a conflict of interest with respect to the engagement. VUG agrees that KPMG, if retained by Valve on a non-contingency fee basis, meets the qualifications in the preceding sentence. The Audit shall take place only during reasonable business hours and in a manner so as not to interfere unduly with VUG's normal business activities, at VUG's offices worldwide, provided that the auditor will attempt to conduct the audit in Los Angeles, California, and Velizy, France before extending the on-site audit to other VUG offices. In that regard, the Audit may not be initiated (although notice of audit may be given) during the first three (3) weeks of any calendar quarter or during the last three (3) weeks of any calendar year. Prior to on-site audit fieldwork, the auditor will discuss with VUG via telephone the initial timing and location(s) for fieldwork and the necessary information for the preparation of a preliminary list of documents and interviewees as required by the following sentence. In order to facilitate on-site audit fieldwork, within (10) business days prior to commencing on-site fieldwork, the auditor will provide an initial written information request of VUG. Such request will contain a preliminary list of documents that the auditor will need to see at the commencement of the audit, and a preliminary list of interviewees that the auditor will need to interview during the on-site audit fieldwork. Additional documents and interviewees may be identified and requested by the auditor during on-site audit fieldwork. The auditor will use commercially reasonable efforts to conclude the on-site field work within one hundred eighty (180) days from the initial on-site visit, and VUG will use commercially reasonable efforts to provide access and otherwise facilitate the completion within such time period. If the on-site field work continues after one hundred eighty (180) days and either party objects, however, the issue may be referred as a Dispute to the Arbitrator, pursuant to paragraph 6 below, for the Arbitrator to determine whether the on-site field work should continue, in light of the reasonableness of the efforts of both the auditor and VUG.

3.  All of the information contained in VUG's books and records and the underlying supporting documentation shall be kept confidential and used only for the purpose of enforcing Valve's rights under the Termination Agreement and hereunder, and shall be revealed only to such employees, agents and/or representatives of Valve as necessary to verify the accuracy of the

**EXHIBIT A**

royalty statements and VUG's compliance with its HL2 Marketing Requirement. Therefore, VUG may require Valve's auditor to execute a reasonable non-disclosure agreement before permitting the auditor access to VUG's records.

4.   Prior to issuing a final report, the auditor will provide VUG a copy of the draft audit report and discuss its draft findings with VUG and Valve. For a period of thirty (30) days after such discussion, VUG shall have the opportunity to respond in writing to the auditor's draft findings. The auditor will consider its findings in light of any additional information disclosed during the thirty (30) day period, perform any additional audit inquiries, procedures, and analysis with respect to such additional information, and adjust its findings as appropriate in its professional judgment. Within forty-five (45) days after the close of such thirty (30) day period (with additional time as necessary to address additional information disclosed by VUG in the thirty (30) day period), the Auditor shall issue a comprehensive final audit report (the "Final Audit Report"). If VUG executes a standard "Approved Reader Letter" a copy of which is attached hereto (typically used by large international accounting firms) or a similar document as required by the auditor, Valve shall furnish VUG with a copy of the Final Audit Report within five (5) days of Valve's receipt.

5.   Within ten (10) days of VUG's receipt of the Final Audit Report, VUG shall pay to Valve any underpayment of royalties or under-expenditure of the HL2 Marketing Requirement payable under the Termination Agreement, except for any amounts subject to a then-current Dispute (as defined below). Within ten (10) days of receipt thereof Valve shall pay to VUG any overpayment of royalties previously paid to Valve, except for any amounts subject to a then-current Dispute (as defined below). Any payments due to either party shall be paid with interest calculated at the rate of one percent (1%). per month compounded monthly. In addition, VUG shall be responsible for all reasonable, documented costs incurred by Valve's auditor to conduct such an examination should an underpayment of royalties of five (5%) percent or more be discovered with respect to royalty fees payable for the aggregate Audit Period.

6.   Within thirty (30) days after execution of the Settlement Agreement, the parties shall mutually agree upon a practicing (or retired within the last five (5) years) CPA with no less than ten (10) years of audit experience including familiarity with conducting royalty audits, and no experience working for either party within the last ten (10) years, to serve as the "Audit Arbitrator" for the resolution of disputes with respect to (a) access to records, personnel, and accounting systems and processes, (b) auditing methods during the Audit, or (c) any amounts owed (a "Dispute"). If the parties are unable to agree on the Audit Arbitrator, each party shall submit its list of candidates to the American Arbitration Association in Seattle, Washington, which will appoint the Audit Arbitrator within ten (10) days of submission. The Audit Arbitrator will agree in writing to maintain the confidentiality of any nonpublic information it receives from the parties as part of the Dispute process. The parties agree to divide any fees required to retain the Audit Arbitrator for his/her service during the Audit; fees specific to any particular Dispute may be awarded by the Audit Arbitrator as provided below.

7.   Any Dispute shall be resolved as follows:

i. Either party may give written notice of a Dispute to the other party's Chief Executive Officer, with an additional copy delivered to the attention of the Chief Financial Officer of the other party.

ii. Within ten (10) business days of receiving notice of a Dispute, Valve's Chief Financial Officer (or his designee) will confer and attempt to resolve the Dispute with VUG's Chief Financial Officer (or his designee).

iii. If the Dispute is not resolved during such conference among the CFOs (or their designees), then no later than twenty (20) business days after the notice of Dispute each party shall deliver to the Audit Arbitrator and the other party a written account of its position with respect to the Dispute. Within ten (10) business days after receipt of both parties' written positions, the Audit Arbitrator shall hold a single conference call with both parties to allow them to present their positions, respond to the other party, and answer any questions the Audit Arbitrator may ask. Further, if the Audit Arbitrator requests any materials in connection with a Dispute no later than the next business day after the conference call, each party shall deliver said materials to the Audit Arbitrator within ten (10) business days after the request. The Audit Arbitrator shall issue a final decision on any Dispute, in writing, within fifteen (15) business days after the conference call. The decision of the Audit Arbitrator concerning any Dispute shall be final and binding on the parties and the parties agree to comply with any decision of the Audit Arbitrator as soon as possible but in no event more than ten (10) business days from the date of receipt of the decision. The Audit Arbitrator shall identify the prevailing party and the losing party in each Dispute, and the losing party shall pay the Audit Arbitrator's fees and costs and the prevailing party's reasonable attorneys' fees and costs incurred in connection with the Dispute (but not including auditor costs for the audit itself, which shall be borne pursuant to paragraph 5 above).

In witness whereof, the duly authorized representatives of each of the parties hereto have executed this Audit Agreement effective as of the Effective Date of the Parties' Settlement Agreement executed concurrently herewith.

SIERRA ENTERTAINMENT, INC.

By: *[signature]*

Name: Bruce Hack

Title: President

VALVE CORPORATION

By:

Name:

Title:

VIVENDI UNIVERSAL GAMES, INC.

By: *[signature]*

Name: Bruce Hack

Title: CEO

      ii. Within ten (10) business days of receiving notice of a Dispute, Valve's Chief Financial Officer (or his designee) will confer and attempt to resolve the Dispute with VUG's Chief Financial Officer (or his designee).

      iii. If the Dispute is not resolved during such conference among the CFOs (or their designees), then no later than twenty (20) business days after the notice of Dispute each party shall deliver to the Audit Arbitrator and the other party a written account of its position with respect to the Dispute. Within ten (10) business days after receipt of both parties' written positions, the Audit Arbitrator shall hold a single conference call with both parties to allow them to present their positions, respond to the other party, and answer any questions the Audit Arbitrator may ask. Further, if the Audit Arbitrator requests any materials in connection with a Dispute no later than the next business day after the conference call, each party shall deliver said materials to the Audit Arbitrator within ten (10) business days after the request. The Audit Arbitrator shall issue a final decision on any Dispute, in writing, within fifteen (15) business days after the conference call. The decision of the Audit Arbitrator concerning any Dispute shall be final and binding on the parties and the parties agree to comply with any decision of the Audit Arbitrator as soon as possible but in no event more than ten (10) business days from the date of receipt of the decision. The Audit Arbitrator shall identify the prevailing party and the losing party in each Dispute, and the losing party shall pay the Audit Arbitrator's fees and costs and the prevailing party's reasonable attorneys' fees and costs incurred in connection with the Dispute (but not including auditor costs for the audit itself, which shall be borne pursuant to paragraph 5 above).

In witness whereof, the duly authorized representatives of each of the parties hereto have executed this Audit Agreement effective as of the Effective Date of the Parties' Settlement Agreement executed concurrently herewith.

SIERRA ENTERTAINMENT, INC.

By:

Name:

Title:

VALVE CORPORATION

By: _/s/ Gabe Newell_

Name: Gabe Newell

Title: President

VIVENDI UNIVERSAL GAMES, INC.

By:

Name:

Title: