# EXHIBIT 1

EXHIBIT 1 TO ACTIVISION BLIZZARDS, INC.'S ANSWER
TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM - 18

EXHIBIT B
Audit Agreement

This Audit Agreement is entered into between Sierra Entertainment, Inc. (formerly known as Sierra On-Line, Inc.), a Delaware corporation and Vivendi Universal Games, Inc., a Delaware corporation (collectively "VUG") and Valve Corporation, a Washington corporation ("Valve").

1.  After Valve receives the final royalty statement from VUG pursuant to Section 6 of the Termination Agreement, but no later than one hundred twenty (120) days thereafter, and with at least fifteen (15) days advance written notice, Valve may, at its own expense, initiate a single, final audit of VUG's books of account and the underlying supporting documentation relating to the licensing and distribution of the Retail Packaged Products and Marketing Expenditures in order to verify the accuracy of the applicable royalty statements tendered by VUG pursuant to the SPA and VUG's compliance with its HL2 Marketing Requirement, as defined in paragraph 11 of the Termination Agreement (the "Audit"). Valve's written audit notice shall specify the period to be audited (the "Audit Period"), provided, however, that the Audit Period may not exceed the range of July 1, 2001 through the Cut-Off Date.

2.  The Audit shall be conducted only by a nationally recognized accounting firm who is not working on a contingency fee basis, and does not have a conflict of interest with respect to the engagement. VUG agrees that KPMG, if retained by Valve on a non-contingency fee basis, meets the qualifications in the preceding sentence. The Audit shall take place only during reasonable business hours and in a manner so as not to interfere unduly with VUG's normal business activities, at VUG's offices worldwide, provided that the auditor will attempt to conduct the audit in Los Angeles, California, and Velizy, France before extending the on-site audit to other VUG offices. In that regard, the Audit may not be initiated (although notice of audit may be given) during the first three (3) weeks of any calendar quarter or during the last three (3) weeks of any calendar year. Prior to on-site audit fieldwork, the auditor will discuss with VUG via telephone the initial timing and location(s) for fieldwork and the necessary information for the preparation of a preliminary list of documents and interviewees as required by the following sentence. In order to facilitate on-site audit fieldwork, within (10) business days prior to commencing on-site fieldwork, the auditor will provide an initial written information request of VUG. Such request will contain a preliminary list of documents that the auditor will need to see at the commencement of the audit, and a preliminary list of interviewees that the auditor will need to interview during the on-site audit fieldwork. Additional documents and interviewees may be identified and requested by the auditor during on-site audit fieldwork. The auditor will use commercially reasonable efforts to conclude the on-site field work within one hundred eighty (180) days from the initial on-site visit, and VUG will use commercially reasonable efforts to provide access and otherwise facilitate the completion within such time period. If the on-site field work continues after one hundred eighty (180) days and either party objects, however, the issue may be referred as a Dispute to the Arbitrator, pursuant to paragraph 6 below, for the Arbitrator to determine whether the on-site field work should continue, in light of the reasonableness of the efforts of both the auditor and VUG.

3.  All of the information contained in VUG's books and records and the underlying supporting documentation shall be kept confidential and used only for the purpose of enforcing Valve's rights under the Termination Agreement and hereunder, and shall be revealed only to such employees, agents and/or representatives of Valve as necessary to verify the accuracy of the

EXHIBIT 1 TO ACTIVISION BLIZZARDS, INC.'S ANSWER
TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM - 19

royalty statements and VUG's compliance with its HL2 Marketing Requirement. Therefore, VUG may require Valve's auditor to execute a reasonable non-disclosure agreement before permitting the auditor access to VUG's records.

4. Prior to issuing a final report, the auditor will provide VUG a copy of the draft audit report and discuss its draft findings with VUG and Valve. For a period of thirty (30) days after such discussion, VUG shall have the opportunity to respond in writing to the auditor's draft findings. The auditor will consider its findings in light of any additional information disclosed during the thirty (30) day period, perform any additional audit inquiries, procedures, and analysis with respect to such additional information, and adjust its findings as appropriate in its professional judgment. Within forty-five (45) days after the close of such thirty (30) day period (with additional time as necessary to address additional information disclosed by VUG in the thirty (30) day period), the Auditor shall issue a comprehensive final audit report (the "Final Audit Report"). If VUG executes a standard "Approved Reader Letter" a copy of which is attached hereto (typically used by large international accounting firms) or a similar document as required by the auditor, Valve shall furnish VUG with a copy of the Final Audit Report within five (5) days of Valve's receipt.

5. Within ten (10) days of VUG's receipt of the Final Audit Report, VUG shall pay to Valve any underpayment of royalties or under-expenditure of the HL2 Marketing Requirement payable under the Termination Agreement, except for any amounts subject to a then-current Dispute (as defined below). Within ten (10) days of receipt thereof Valve shall pay to VUG any overpayment of royalties previously paid to Valve, except for any amounts subject to a then-current Dispute (as defined below). Any payments due to either party shall be paid with interest calculated at the rate of one percent (1%) per month compounded monthly. In addition, VUG shall be responsible for all reasonable, documented costs incurred by Valve's auditor to conduct such an examination should an underpayment of royalties of five (5%) percent or more be discovered with respect to royalty fees payable for the aggregate Audit Period.

6. Within thirty (30) days after execution of the Settlement Agreement, the parties shall mutually agree upon a practicing (or retired within the last five (5) years) CPA with no less than ten (10) years of audit experience including familiarity with conducting royalty audits, and no experience working for either party within the last ten (10) years, to serve as the "Audit Arbitrator" for the resolution of disputes with respect to (a) access to records, personnel, and accounting systems and processes, (b) auditing methods during the Audit, or (c) any amounts owed (a "Dispute"). If the parties are unable to agree on the Audit Arbitrator, each party shall submit its list of candidates to the American Arbitration Association in Seattle, Washington, which will appoint the Audit Arbitrator within ten (10) days of submission. The Audit Arbitrator will agree in writing to maintain the confidentiality of any nonpublic information it receives from the parties as part of the Dispute process. The parties agree to divide any fees required to retain the Audit Arbitrator for his/her service during the Audit; fees specific to any particular Dispute may be awarded by the Audit Arbitrator as provided below.

7. Any Dispute shall be resolved as follows:

i. Either party may give written notice of a Dispute to the other party's Chief Executive Officer, with an additional copy delivered to the attention of the Chief Financial Officer of the other party.

    ii. Within ten (10) business days of receiving notice of a Dispute, Valve's Chief Financial Officer (or his designee) will confer and attempt to resolve the Dispute with VUG's Chief Financial Officer (or his designee).

    iii. If the Dispute is not resolved during such conference among the CFOs (or their designees), then no later than twenty (20) business days after the notice of Dispute each party shall deliver to the Audit Arbitrator and the other party a written account of its position with respect to the Dispute. Within ten (10) business days after receipt of both parties' written positions, the Audit Arbitrator shall hold a single conference call with both parties to allow them to present their positions, respond to the other party, and answer any questions the Audit Arbitrator may ask. Further, if the Audit Arbitrator requests any materials in connection with a Dispute no later than the next business day after the conference call, each party shall deliver said materials to the Audit Arbitrator within ten (10) business days after the request. The Audit Arbitrator shall issue a final decision on any Dispute, in writing, within fifteen (15) business days after the conference call. The decision of the Audit Arbitrator concerning any Dispute shall be final and binding on the parties and the parties agree to comply with any decision of the Audit Arbitrator as soon as possible but in no event more than ten (10) business days from the date of receipt of the decision. The Audit Arbitrator shall identify the prevailing party and the losing party in each Dispute, and the losing party shall pay the Audit Arbitrator's fees and costs and the prevailing party's reasonable attorneys' fees and costs incurred in connection with the Dispute (but not including auditor costs for the audit itself, which shall be borne pursuant to paragraph 5 above).

In witness whereof, the duly authorized representatives of each of the parties hereto have executed this Audit Agreement effective as of the Effective Date of the Parties' Settlement Agreement executed concurrently herewith.

SIERRA ENTERTAINMENT, INC.

By: *[signature]*

Name: Bruce Hack

Title: President

VALVE CORPORATION

By:

Name:

Title:

VIVENDI UNIVERSAL GAMES, INC.

By: *[signature]*

Name: Bruce Hack

Title: CEO

# EXHIBIT 1 TO ACTIVISION BLIZZARDS, INC.'S ANSWER
# TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM - 21

  ii. Within ten (10) business days of receiving notice of a Dispute, Valve's Chief Financial Officer (or his designee) will confer and attempt to resolve the Dispute with VUG's Chief Financial Officer (or his designee).

  iii. If the Dispute is not resolved during such conference among the CFOs (or their designees), then no later than twenty (20) business days after the notice of Dispute each party shall deliver to the Audit Arbitrator and the other party a written account of its position with respect to the Dispute. Within ten (10) business days after receipt of both parties' written positions, the Audit Arbitrator shall hold a single conference call with both parties to allow them to present their positions, respond to the other party, and answer any questions the Audit Arbitrator may ask. Further, if the Audit Arbitrator requests any materials in connection with a Dispute no later than the next business day after the conference call, each party shall deliver said materials to the Audit Arbitrator within ten (10) business days after the request. The Audit Arbitrator shall issue a final decision on any Dispute, in writing, within fifteen (15) business days after the conference call. The decision of the Audit Arbitrator concerning any Dispute shall be final and binding on the parties and the parties agree to comply with any decision of the Audit Arbitrator as soon as possible but in no event more than ten (10) business days from the date of receipt of the decision. The Audit Arbitrator shall identify the prevailing party and the losing party in each Dispute, and the losing party shall pay the Audit Arbitrator's fees and costs and the prevailing party's reasonable attorneys' fees and costs incurred in connection with the Dispute (but not including auditor costs for the audit itself, which shall be borne pursuant to paragraph 5 above).

In witness whereof, the duly authorized representatives of each of the parties hereto have executed this Audit Agreement effective as of the Effective Date of the Parties' Settlement Agreement executed concurrently herewith.

SIERRA ENTERTAINMENT, INC.

By:

Name:

Title:

VALVE CORPORATION

By: *[signature]*

Name: Gabe Newell

Title: President

VIVENDI UNIVERSAL GAMES, INC.

By:

Name:

Title:

**EXHIBIT 1 TO ACTIVISION BLIZZARDS, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM - 22**